**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Robert L. Stark Enterprises, Inc.,** | ) | **CASE NO. 1:16 CV 264** |
| ***et al.*,** | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Neptune Design Group, LLC,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendant.** | ) | |


## <u>INTRODUCTION</u>

This matter is before the Court upon Plaintiffs' Motion for Summary Judgment on

Copyright Infringement (Doc. 28). Also pending is Plaintiffs' Motion for Summary Judgment

on DMCA Claim (Doc. 29). This is a copyright infringement case. For the reasons that follow,

the motions are GRANTED in PART and DENIED in PART. Plaintiff is entitled to summary

judgment on all claims, with the exception of the copyright infringement and corresponding

declaratory judgment claims as they pertain to defendant's allegation that plaintiff emailed

copies of certain plans to Bialosky.

1

## FACTS

Plaintiffs Robert L. Stark Enterprises, Inc. and Yogurt Treats (collectively "plaintiff") bring this lawsuit against defendant Neptune Design Group, LLC seeking a declaratory judgment of non-infringement and further asking that the Court declare that plaintiff did not improperly remove Copyright Management Information ("CMI").

MGI Group, Inc. ("Menchie's") started as a frozen yogurt store located in California. The plans for that location were prepared by another architect. The plans include a circular pay counter and a curved wall of yogurt machines. Mara Lubbell worked as a designer on the Menchie's brand, including preparing the logo and determining colors, shapes, characters, features, and other design elements. By 2008, other Menchie's stores were located in California. In October of 2008, Elisa Bayha and Chris Neal, employees of defendant, met with a Menchie's representative regarding the possibility of replacing Menchie's previous architect. (Bayha Dep. 16-17). Menchie's was looking to replace its "teams" as it was not happy with any of the previous architectural teams and was unhappy with the existing stores. (Bayah Dep. 16). After the meeting, Bayha and Neal again met with Menchie's and toured certain store locations. (Bayha Dep. 18). After a subsequent meeting, Menchie's sent defendant a number of materials including a "graphic designer generated elevations for the Fallbrook store," a "layout for the Fallbrook store," "the same graphic designer developed rendered plan -- or layout or elevation for the Valley Village store," and "a set of drawings for Culver City." (Bayha Dep. 20). In addition, at some point Menchie's provided defendant with construction documents for the Rendondo Beach store and 3-D color renderings, *i.e.,* color illustrations, of the Valley Village store. (Neal Dep. 35, 53).

The parties agree that the first project defendant submitted to Menchie's involved the Woodland Hills store. (Bahya Dep. 123). Defendant and Menchie's entered into a design services contract with respect to this store and all other stores for which defendant provided services to Menchie's franchisees. ("DS Contracts"). The DS Contracts were either between Menchie's and defendant or defendant and the franchisee. Those contracts provide, in relevant part:

> Drawings, specifications, and other design documents, whether written or electronic, prepared by [defendant] or [defendant] consultants, are instruments of service used solely with respect to this Project. [Defendant] and [defendant's] consultants are deemed the authors and sole owners of their respective instruments of service and shall retain all common law, statutory, and other reserved rights, including copyrights. [Menchie's] and [Menchie's] contractors shall have no right to copy or use the data on other projects, or for additions to this Project, without agreement of and compensation to [defendant], and all of Client's written agreement with its contractors shall reflect this fact accordingly....

(Doc. 37).

The construction drawings for the Woodland Hills store are dated November 14, 2008 and entitled "2008 MGI CD Set of Plans." (Hereafter, "2008 Plans") (Neal Depo. Ex. 26). The architect for the project was David Udkow. (Bayha Dep. 24). Udkow was not employed by defendant and, instead, was an independent contractor (Bayha Dep. 25). The plans identify Udkow as the architect. (Neal Dep. Ex. 26 a p.3). Udkow is a licensed architect who reviewed the plans for approval and permitting. (Bahya Dec. 19). He did not participate in the creation of any work for which defendant received a copyright. (Bahya Dec. ¶ 19)[1]. In addition, the plans

---

[1]    Plaintiff moves to strike the declaration of Bahya for various reasons. The Court need not reach the issue. Although the declaration is rife with statements that are not based on personal knowledge and are in essence an effort by defendant to simply have a witness aver to the truth of the entire brief, the Court did not rely on the declaration in a manner that detrimentally affected

provide:

> Upon city approval and permit these plans have been reviewed by Menchie's for its design consistency and conformity to Menchie's strict design standards. Under no circumstances shall these drawings be modified in any way without the express written consent of both the architect and Menchie's corporate office.

Defendant used the outcome of the Woodland Hills project as a template for the next project. After the first few months of the relationship, Menchie's and defendant agreed that Menchie's would use defendant exclusively for the development of all future franchises. (Bahya Dec. ¶ 6). Thereafter, defendant created a document entitled "2009 [Menchie's] Design Guide" to assist franchisees and building contractors. (Bahya Dec. ¶ 23). In addition, for approximately four years, defendant created store designs, floor layouts, and construction documents for Menchie's stores. (Bahya Dec. ¶ 6). Ultimately, defendant registered a number of copyrights correlating to plans defendant prepared for various Menchie's stores, although defendant did not disclaim any pre-existing material in these registrations. Defendant obtained a copyright registration from the Copyright Office on May 13, 2005. (Neal Dep. Ex. 26).

In late 2010, plaintiff began its relationship with Menchie's. Plaintiff planned to build a number of stores quickly. (Neal Depo. Ex. 11). Menchie's required plaintiff and defendant to work together on the projects. To that end, plaintiff and defendant entered into four DS Contracts for locations in Ohio ("Ohio DS Contracts"). Defendant created and delivered to plaintiff plans for those stores. Defendant obtained copyright registrations for those materials.

Defendant further prepared some initial layouts for additional stores plaintiff intended to open. Defendant sent those initial layouts to Menchie's for review. (Bayha Dep. p. 79-80). At

---

plaintiff.

4

some point in the process, plaintiff became frustrated with defendant's work. Plaintiff inquired of Menchie's as to whether plaintiff could utilize the services of another architect for the remaining stores it planned to open. It appears that Menchie's agreed. (Regev. Dep. Ex. M)

To that end, plaintiff hired Bialosky + Partners Architects, LLC ("Bialosky") to replace defendant. Plaintiff continued to be bound by its obligations as a franchisee of Menchie's. In other words, plaintiff had to operate under the "Menchie's System," which included utilizing certain design requirements imposed by Menchie's. (Kleinberger Dep. Ex. C). As such, Menchie's instructed one of its employees to send plaintiff "2-3 full packages of new projects (make sure you are using the most update [sic] package; new frames, starlet, etc.') ....We provide the different plans to make sure [plaintiff] has all items and can convert a full set for CAD.[2]" (Regev. Dep. Ex. L). In addition, the agreement between plaintiff and Bialosky required Bialosky to create site specific architectural plans "based on Menchie's standard criteria drawings." (Rapport Dep. Ex. 27 at ¶ 1). The agreement further provides that plaintiff "will be provided with Autocad.dwg CAD files of the prototype drawings that will be created by scanning existing drawings. The CAD files that we are provided with will be created using our standard layering system...." (Id. at § G5).

Menchie's sent plaintiff the drawings with instructions to have CAD files created from the PDF files. (Deutsch Dep. Ex X). Plaintiff forwarded to Bialosky plans for certain Menchie's stores. The drawings had title blocks containing defendant's name, as well as the name of the architect. The drawings also had Menchie's name on them. From this set, Bialosky selected drawings of a North Carolina Menchie's store, along with several pages of the Westgate store, to

---

[2]     It appears that CAD stands for "computer aided design."

send to a CAD company. (Deutsch Dep. 164-67). Bialosky also sent its "layering standards" to create a "kit" that Bialosky could use in designing the stores for plaintiff. Bialosky always receives prototype drawings and puts them into its specific CAD format. (Deutsch Dep. 151-52). At no point did any party receive permission from defendant to use works copyrighted by defendant and defendant was not included in the communications between Menchie's and plaintiff. Thereafter, Bialosky created a number of drawings used by plaintiff in opening new Menchie's stores. Plaintiff testified that all of the Menchie's franchises it opened share a "very consistent" design.

Defendant also testified that it had received shell drawings prepared by the architect of the buildings in CAD form from the landlord. According to defendant, these drawings contain only shell outlines of the space. Defendant incorporated the CAD into its CAD in order to create a design for the Menchie's store. (Bayha Dep. 51). Defendant indicated that such a process is commonplace. (Bayha Dep. 141-42).

In February of 2013, while working together on another project, Menchie's sent defendant a confidentiality agreement. That document provides that all "Confidential Information," which is defined to include copyrights, belongs to Menchie's. The document is missing the evenly numbered pages, and the "Confidential Information" provision is set forth on an evenly numbered page. Nonetheless, the parties signed the document.

Thereafter, in October of 2013, defendant and Menchie's agreed to part ways. (Neal Dep. 139-140). Defendant offered Menchie's full ownership rights to its CAD files and designs for two Menchie's franchise drawings, as well as a set of "drive through" designs. Menchie's responded that it did not believe it needed the design plans for two stores or the drive-through

designs. (Neal Dep. Ex. 20). As such, Menchie's inquired as to whether the price for the CAD for one store would be $4,500.00. (Id). It does not appear that any further communication occurred. (Neal Dep. 146). One of Mechine's employees testified that he understood the email to be an offer to perform new work. (Regev Dep. 94). Menchie's believes that it owns the rights to items such as "the logo, colors, the curved wall and the circular bubble, the signage, whether it's interior and exterior." (Kleinberger Dep. 245). This is so because these elements were present in the first store. (Id.).

In late 2015, counsel for defendant wrote to plaintiff alleging that defendant owned certain copyrighted designs, including those covered under the DS Contracts and others, and that plaintiff had used those designs without defendant's permission. In response, plaintiff filed this lawsuit asserting two claims for declaratory relief. Count one seeks a declaration of non-infringement and count two seeks a declaration that plaintiff did not violate the Digital Millennium Copyright Act ("DMCA"). Defendant filed a counterclaim asserting ten claims for relief. Counts one through eight assert copyright infringement claims. Count nine is a claim for violation of DMCA and count ten is a claim for breach of contract. The Court previously granted in part defendant's motion to compel mediation and arbitration. The Court determined that counts one and two, as well as counterclaims one through nine, are subject to mediation and arbitration to the extent they are based on copyrights derived from work performed pursuant to the Ohio DS Contracts. The Court further compelled mediation and arbitration with respect to the breach of contract claim.

Plaintiff now moves for summary judgment with respect to the remaining claims and defendant opposes the motions.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard. See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,

8

> depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

## ANALYSIS

1. Copyright infringement

Copyright owners possess certain protections for "original works of authorship expressed

9

in various media." *Strombeck v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004). That

protection provides the copyright owner with exclusive rights to:

      (1) reproduce the copyrighted work;

      (2) prepare derivative works;

      (3) distribute copies;

      (4) perform publically a copyrighted work; and

      (5) display publically a copyrighted work.

17 U.S.C. § 106.

      In order to establish a claim for copyright infringement, a party must prove: (1)

ownership of a valid copyright; and (2) copying of constituent elements of the work that are

original. *Feist Publishing, Inc. v. Rurual Telephone Services, Co.*, 499 U.S. 340, 361 (1991).

Infringement may be established with either direct evidence of copying, or through an inference

of copying. A copyright owner may establish "an inference of copying by showing (1) access to

the allegedly-infringed work by the [infringer] and (2) a substantial similarity between the two

works at issue." *Kohus v. Marisol*, 328 F.3d 848, 853-54 (6th Cir. 2003).

      Here, the parties dispute both "ownership" and "copying." For ease of analysis, the

Court will address these elements in reverse order.

      Defendant argues that it has presented evidence of direct copying. According to

defendant, plaintiff reproduced and distributed certain works covered by defendant's copyrights

when it forwarded to Bialosky via email PDF versions of the materials. Bialosky then forwarded

the materials to a company that created CAD files from the PDF files. Although not specifically

identified by the parties, it appears that two sets of Westgate plans, as well as plans for the Avon

and Lakewood locations, were provided by plaintiff to Bialsoky. (Deutsch Dep. Exs. M, N, O).[3]

Bialsoky then instructed a CAD firm to convert certain aspects of the plans into Bialosky's CAD

form. In response, plaintiff argues that in order to constitute "distribution" in violation of 17

U.S.C. § 106, the transmission must be tied to an "end purpose." In other words, plaintiff argues

that nothing suggests that "forwarding an email is in and of itself distribution in violation of the

statute." The Court is not convinced that plaintiff's argument is correct, but it need not

specifically address this issue. As set forth in the counterclaim, defendant alleges that by

emailing the plans to Bialsoky, who then forwarded the plans to a CAD company, plaintiff

*reproduced* the copyrighted material in violation of 17 U.S.C. § 106(1). Although defendant did

not fully develop this argument, plaintiff wholly fails to address the issue of whether plaintiff's

actions constitute reproduction–as opposed to distribution–and, as such, the Court must conclude

that a question of fact exists with regard to whether plaintiff reproduced the Westgate,

Lakewood, and Avon plans that were subject to defendant's copyrights.

With regard to all other copyrighted plans, there is no direct evidence of infringement.

Therefore, in order to satisfy the copying element of an infringement claim, defendant may rely

on an inference of copying by showing (1) access to the allegedly-infringed work by the

[infringer] and (2) a substantial similarity between the two works at issue. *Kohus,* 328 F.3d at

853-54. Assuming *arguendo* that plaintiff had access to the allegedly infringing work, the Court

finds that defendant wholly fails to satisfy the "substantial similarity" prong.

---

[3]     Additional plans were forwarded as well, but defendant does not
attach Copyright registrations for those plans to its counterclaim.
As such, it does not appear that these plans are at issue in this
lawsuit.

In assessing whether two works are substantially similar, this Court must apply a two-part test. First, the Court must "filter out the unoriginal, unprotectible elements – elements that were not independently created by the inventor, and that possess no minimal degree of creativity, through a variety of analyses." *Stromback v. New Line Cinema*, 384 F.3d 283, 294 (6th Cir. 2004). Second, the Court is to "determine whether the allegedly infringing work is 'substantially similar' to protectible elements of the artist's work." *Id*. And, although "summary judgment in favor of an [accused infringer] in a copyright case is a practice that should be used sparingly, in an appropriate case, a court may compare the two works and render summary judgment for the [accused infringer] on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity." *Id*.

Plaintiff argues that defendant has not identified any specific protectible element in any particular copyrighted material. In response to an interrogatory propounded by plaintiff, defendant responded:

> [Defendant] states that with respect to its Copyrighted Works, the selection and combination of individual features, the overall form, flow and function, as well as the arrangement and composition of spaces and elements in the design are all original to it. These original elements include but are not limited to such things as the sizes and shapes of the kitchen, walk-in coolers, bathrooms, serving area, purchase area, and dining area; and the spatial relationships of these areas to each other; the size, including length, width and height, as well as the arrangement and shapes of walls (angled, curved and/or partial walls), kitchen counters, walk-in coolers, serving counters, serving machines, toppings bar, cash register area, windows and doors and the relationships between and among these features; arrangements, locations and spatial relationships between and among appliances, countertops, bathrooms, serving area, purchase area, and dining area; the arrangement and placement of kitchen closets, walk-in cooler, and other storage type areas; and the manner in which the traffic flows through the store. Further, the selection of stylish elements and materiality, such as colors and designs of walls, including the "bubble tile radius, travel-area wall," the toppings counter "wave wall," design of the circular kiosk pay-station area, circular soffit above the

circular kiosk pay-station area, the selection and incorporation of the entire FF&
E, and the overall "look and feel" of Menchie's restaurant branding.

Plaintiff argues that this response is insufficiently general to allow the Court to determine

what features are unique, as opposed to dictated by the Menchie's design requirements or the

practicalities of working within a particular space. In other words, anything arguably "original"

is the result of the things such as landlord requirements, existing conditions, and government

regulations, as opposed to creative expression.

With regard to substantial similarity, plaintiff argues that defendant wholly fails to

identify a particular plan created by Bialosky and compare it to defendant's copyrighted

material. Bialosky describes certain plans it created as "extremely" different from Menchie's

criteria plans, including a Texas store plan drawn by defendant. Plaintiff also notes that at best

the only similar features are the circular sales counter and curved wall of the yogurt dispensers.

Plaintiff points to evidence, however, indicating that these features were present in the first

Menchie's store, which was constructed prior to defendant's involvement and thus cannot be

said to an expression of defendant's creativity.

In response, defendant notes that pursuant to 17 U.S.C. § 101, an architectural work is

defined as "the overall form as well as the arrangement and composition of spaces and elements

in the design, but does not include individual standard features," such as common windows,

doors, and other staple building requirements." Defendant then points out that plaintiff produced

construction plans for the stores developed with Bialosky and notes that the "accused works are

strikingly similar in too many ways to have been the product of independent creation.[4]"

---

[4]     Defendant also cites to the deposition of Neal in support of this
        proposition, but that testimony does not appear to be on point.

Defendant further notes that plaintiff admitted that all Menchie's stores developed by plaintiff share a "very consistent design."

Upon review, the Court finds that plaintiff is entitled to summary judgment on the issue of "substantial similarity." Here, defendant makes no effort to point out specific original elements contained in its designs. In fact, defendant does not even refer to a particular plan when addressing this issue. Undoubtedly, the plans are different, yet defendant makes only a generic recitation regarding "original elements" that would apply to essentially *any* architectural plan.[5] But, even assuming that defendant's generic argument regarding the "overall look and feel" is somehow sufficient to identify the creative elements so that this Court could perform a filtering analysis, defendant wholly fails to point the Court to any allegedly infringing comparison plan for the Court to compare. Here, defendant alleges ten copyrighted works that it claims plaintiff infringes upon. Defendant then summarily points out that plaintiff produced "construction sets" and that the "accused works" are "strikingly similar." These ten copyrightrighted works vary from each other, as do Bialosky's plans. Yet, at not point does defendant discuss a specific copyrighted plan or compare such plan to any allegedly infringing plan or construction set. Based on this analysis, no reasonable juror could find that any allegedly infringing plan is "substantially similar" to defendant's copyrighted materials. Thus, although summary judgment is granted sparingly, it is appropriate here based on defendant's wholesale

(Neal Dep. 3-7, 23, 26-28, 30).

[5]     Defendant's interrogatory response does identify the "bubble tile radius, travel-area wall" and the toppings counter "wave wall." It is not at all clear, however, where these elements appear, as defendant fails to discuss the copyrighted materials themselves.

failure to even point out which two plans the fact finder should compare.

Having concluded that a question of fact exists as to the "copying" element only with respect to the plans emailed by plaintiff to Bialosky and then forwarded to the CAD company, the Court turns to whether plaintiff is entitled to summary judgment with respect to copyright "ownership." It appears that plans for the Westgate store, as well as plans for the Avon and Lakewood locations, were arguably reproduced by plaintiff when it provided them to Bialosky. Those plans are the subject of copyright registrations that were obtained within five years of first publication. As such, a presumption of validity attaches. 17 U.S.C.A. § 410(c). Although this presumption may be rebutted, it is the burden of the party challenging the copyright to do so. *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).

To rebut this presumption, plaintiff argues that the 2008 Plans provide that the architect for the project is David Udkow, who performed the work as an independent contractor. In addition, plaintiff notes that a note appears on the face of this set of plans, which provides that the plans cannot be modified without the express written consent of Menchie's. According to plaintiff, because the document reserves exclusive rights only to Menchie's, defendant cannot assert ownership rights over the plans. Plaintiff further points out that defendant testified that he considers the architect to be the owner of the work. And, in this case, the architect is not an employee of defendant.

In response, defendant points out that Udkow did not design or in any other way create the plans. Rather, he reviewed the plans and signed them for permitting purposes. Plaintiff further points out that the Ohio DS Contracts between plaintiff and defendant provide that defendant owns the copyrights to the plans. In addition, defendant notes that the franchise

disclosure documents provided to franchisees from Menchie's contain the following language:

> As of the date of this Disclosure Document we do not own any rights in or to any patents, patent applications or copyrights that are material to the franchise. We claim copyright protection for our Operations Manual and other publications and promotional materials although we have not registered any of the materials with the U.S Copyright Office.... We reserve the right to register any of our copyrighted materials at any time we deem appropriate.

(Neal Dep. Ex. 18).

Upon review, the Court finds that plaintiff is not entitled to summary judgment on the issue of copyright ownership. As an initial matter, as noted previously, the plans that were emailed to Bialosky are plans for which a presumption of validity attaches. Therefore, the burden is on plaintiff to rebut that presumption. Plaintiff has not done so for purposes of summary judgment. Although plaintiff points out that the registration for the 2008 Plans provides that the plans cannot be modified without the express written consent of Menchie's, plaintiff points to no such language on the face of the particular plans that plaintiff sent to Bialosky. Although plaintiff notes that the Westgate store plans provide that Udkow was the architect, defendant notes that Udkow was engaged for permitting and approval purposes only. Plaintiff points to no evidence indicating that Udkow actually created the plans that are the subject of the copyright registrations.

In its reply brief, plaintiff claims that its argument is that Menchie's – not defendant– owned the 2008 Plans. Specifically, plaintiff argues that "undisclosed pre-existing material, which consists of the [2008 Plans] and the criteria drawings [defendant] admits receiving from Menchie's prior to the creation of the [2008 Plans], was owned by Menchie's, not [defendant]." The argument is insufficient to warrant summary judgment on the issue of ownership. Although plaintiff offers testimony that certain documents and drawings were prepared by previous

16

architects and sent to defendant, there is no indication that these drawings consisted of the 2008 Plans, as claimed by plaintiff. Without any explanation, the Court finds that plaintiff fails to overcome the presumption afforded to the copyright registrations for the plans sent by plaintiff to Bialosky. At best, plaintiff points to evidence indicating that Menchie's *may* be an owner of the 2008 Plans.

Plaintiff also asks the Court to invalidate the copyright on the grounds that plaintiff failed to identify the 2008 Plans as preexisting work that underlies the registrations for the Westgate, Avon Lake, and Lakewood stores. According to plaintiff, defendant cannot establish that the registrations for these stores contain minimal creativity. Plaintiff points out that none of the registrations disclaim as preexisting material the 2008 Plans, Udkow's work, or any earlier Menchie's designs. In other words, it appears that plaintiff is claiming that the copyright registrations for the plans plaintiff sent to Bialosky are invalid because they are derivative works and defendant failed to disclose pre-existing works when obtaining the registration.

The Court finds that plaintiff is not entitled to summary judgment on this issue. "The purpose of the Copyright Act requires that the application for copyright registration of a derivative work 'shall include ... an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered.'" *Dorchen/Martin Associates, Inc. v. Brook of Cheboygan, Inc.*, 2012 WL 4867608 (E.D. Mich. Oct. 15, 2012)(citing 17 U.S.C. § 409(9)).

> "The issue raised by § 409(9) is whether and to what extent the derivative design incorporates elements designed by someone else." *Frank Betz Associates, Inc. v. J.O. Clark Const., LLC*, 2010 WL 2253541, at *11 (M.D.Tenn. May 30, 2010). Where the evidence indicates that Plaintiff created derivative designs based on its own original designs, "the concerns that § 409(9) raises are not implicated." *Id*.

17

*Id.* at *5.

Here, as set forth above, a question of fact exists as to whether defendant owns the copyright in the 2008 Plans. To the extent defendant owns a valid copyright in those plans, the Court finds that on the facts of this case, the failure to disclose the plans as pre-existing material when registering later works, standing alone, would not invalidate the subsequent registration. As the copyright would have simply incorporated plans created by defendant, its failure to identify those plans as pre-existing materials does not implicate Section 409(9) of the Copyright Act. Accordingly, summary judgment in favor of plaintiff is not proper.

It further appears that plaintiff is claiming that defendant failed to re-disclose the pre-existing material identified in the 2008 Plans. In that registration, defendant identified "photography, jewelry design, 2-D artwork, sculpture, technical drawing" as material excluded from the claim. Plaintiff further notes that defendant used the 2008 Plans as a prototype for future stores. The Court finds that plaintiff is not entitled to summary judgment because plaintiff fails to point out that these previously disclosed items are contained in the plans that plaintiff emailed to Bialosky. Although defendant may have used the 2008 Set of Plans as a "prototype," there is no indication that defendant incorporated *every item* contained in those plans in creating the subsequent plans. As such, the Court simply cannot say whether these items constitute pre-existing materials that should have been disclosed by defendant. Accordingly, summary judgment is not warranted.

Next, plaintiff argues that it was authorized to use the design plans. According to plaintiff, Menchie's possessed joint ownership rights in the plans or, at a minimum, Menchie's had an implied license to use the plans. Menchie's, in turn, gave plaintiff permission to copy and

18

distribute the plans to Bialosky.  In support of its position, plaintiff notes that the process utilized

by Menchie's and defendant was collaborative, in that Menchie's would provide defendant with

a packet of information about a new location along with the franchisee's contact information.

Defendant drew an initial layout and sent it to Menchie's for approval.  Thereafter, Menchie's

might make changes to the design before forwarding the design to the franchisee.  Here,

defendant sent initial layouts for the Lakewood and Avon stores to Menchie's.

In response, defendant argues that the burden of establishing an authorized use defense

rests with plaintiff.  Defendant points out that in all of the DS Contracts signed by the

franchisees, the franchisee and defendant agreed that defendant owned the plans and design

documents.  Defendant further notes that plaintiff testified that at the time plaintiff and defendant

"parted ways," defendant had no reason to believe that anyone other than defendant owned the

the designs to the "four stores.[6]"

> A non-exclusive license may be granted orally, or may be implied from conduct. This is
> true because a nonexclusive license is not a transfer of ownership under 17 U.S.C. § 101
> and is not, therefore, subject to the writing requirement of § 204.  The key to finding an
> implied license is in the intent of the copyright holder.  Like an express license, the
> existence of an implied license to use the copyright for a particular purpose precludes a
> finding of infringement.

*Murphy v. Lazarev*, 589 Fed.Appx. 757, * 765 (6th Cir. 2014)(citations and quotations omitted).

Upon review, the Court finds that plaintiff is not entitled to summary judgment on the issue of

implied license.[7]  Here, the Court must determine whether defendant intended to grant Menchie's

---

[6]     It appears that the deponent may be referring to the stores that are
the subject of the Ohio DS Contracts.

[7]     For the reasons stated previously, the Court finds that question of
fact exists as to whether Menchie's is a "co-owner" of the plans.

an implied license to use the plans that Menchie's provided to plaintiff, who then in turn provided them to Bialosky. There is simply no evidence that defendant intended to grant Menchie's an implied license with respect to plans where the franchisee refused to utilize defendant on the project. Rather, the evidence shows that defendant was in essence the exclusive architect with respect to the construction of Menchie's stores. To that end, defendant entered into DS Contracts with the franchisee, pursuant to which defendant was paid to prepare plans. Those agreements further inform the franchisee that "[Menchie's] and [Menchie's] contractors shall have no right to copy or use the data on other projects, or for additions to this Project, without agreement of and compensation to [defendant].[8]" However, it appears that with respect to at least certain plans, *i.e.*, the Lakewood and Avon stores, defendant prepared plans, but the parties did not sign DS Contracts with respect to those plans. *See, e.g., Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998). Although plaintiff points to some evidence that Menchie's may have been granted an implied license with respect to certain plans, that evidence is insufficient to warrant summary judgment.

## 2. DMCA

Plaintiff also moves for summary judgment on defendant's DMCA claim. There, defendant alleges that plaintiff violated 17 U.S.C. § 1202, which provides:

---

[8] The Court rejects plaintiff's argument that the DS Contracts have no place in this analysis. Although the contracts were not with Menchie's, plaintiff was in fact a party to four DS Contracts. Thus, at a minimum, a genuine issue of material fact exists as to whether defendant intended to grant a license to Menchie's that would allow Menchie's to then grant a license to plaintiff. This is so because the DS Contracts evidence defendant's intent to *not* grant such a license.

(b) Removal or alteration of copyright management information. –No person shall, without the authority of the copyright owner or the law–

(1) intentionally remove or alter any copyright management information,

(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

Plaintiff argues that it is entitled to summary judgment on this claim because there is no evidence that anyone removed any copyright management information ("CMI").[9]  Plaintiff argues that Bialosky, through a third-party, created a CAD file using Bialosky's layering instructions.  According to plaintiff , the testimony shows that the CAD process does not "remove" CMI.  Rather, information is inputted into Bialosky's layering system, which produces a new work.  It is not an exact copy of defendant's original work.  Therefore, at no point did anyone "remove" CMI.  Plaintiff further argues that defendant cannot establish actual knowledge of unauthorized removal.  Rather, the evidence shows that plaintiff understood that it had permission from Menchie's to use the drawings.

In response, defendant argues that the definition of removal should not be so narrowly construed.  Rather, the Court should not require that a party physically remove the CMI.  According to defendant, the evidence establishes that plaintiff performed "acts of removal" through its agent, *i.e.*, Bialosky.  Defendant points out that plaintiff forwarded emails containing defendant's copyrighted works to Bialosky.  Defendant further notes that "Bialosky...converted

_____

[9]     CMI includes items such as the title and author of the work.  17 U.S.C. § 1202(c).

[the copyrighted works] from PDF to CAD, and used them in order to create the sixteen additional [Menchie's] stores." According to defendant, the new stores are "strikingly similar" to defendant's works, yet they do not display defendant's CMI. In essence, defendant argues that Bialosky removed the CMI and then created derivative works without retaining defendant's CMI on those derivative works.

Upon review, the Court finds that plaintiff is entitled to summary judgment. Here, plaintiff admittedly sent copyrighted plans to Bialosky, which then scanned the documents into its system.[10] To the extent these actions could arguably constitute copying, there is no evidence even suggesting that the CMI was removed during this process. Accordingly, these actions are not sufficient to establish a violation of the DMCA. Moreover, the Court finds that defendant fails to point to a genuine issue of material fact with regard to the "removal" of the CMI during the CAD conversion process. Deutsch, an employee of Bialosky, testified that Bialosky modifies the materials in order to conform them to Bialosky's layering system. In other words, the program does not "copy" the materials. Rather, it creates a digital layer similar to overlay drafting and the layering instructions result in changes to the materials based on the layering system employed.[11] Although defendant generically argues that the plans created from this

---

[10]     Defendant argues that Bialosky itself scanned documents, as opposed to having received documents scanned by plaintiff. The testimony cited, however, does not directly support this proposition. See, (Deutsch Dep. 202-203)("I've said that I have -- we had scanned drawings that we received that were prototype drawings....")

[11]     See Deutsch Dep. Ex. X. (Email noting that "the layer standards for the MEP drawings will be sent separately but in the meantime the work on the architectural drawings can begin. Please note that there are standards for 1.) Floor Plans, 2.) Reflected Ceiling Plans,

process are "strikingly similar," defendant wholly fails to show that the resulting works are "copies" of defendant's copyrighted work. Because there is no evidence that plaintiff or its agents removed CMI from defendant's original work or "distributed" a "copy" of defendant's work knowing that CMI had been removed, summary judgment in favor of plaintiff is warranted. *See, e.g. Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 263556 (D. Hawai'i Jan. 21, 2015)("basing a design on the [previous architect's] work [is] not the same as removing copyright management information from an original copyrighted work."); *See also, Kelly v. Arriba*, 77 F.supp.2d 1116, 1122 (C.D. Cal. 1999)( "Based on the language and structure of the statute, the Court holds that [Section 1202(b)(1)] applies only to the removal of copyright management information on a plaintiff's product or original work," and Section 1202(b)(3) requires the claimant to show that the wrongdoer distributed *copies* wherein the CMI was removed) . [12]

## **CONCLUSION**

For the foregoing reasons, plaintiff is entitled to summary judgment on all claims, with the exception of the copyright infringement and corresponding declaratory judgment claims as they pertain to defendant's allegation that plaintiff emailed copies of certain plans to Bialosky.

---

3.) Interior Elevations, and 4.) Sections Detail views. This means that the person setting up the layers should use the corresponding standard for each type of drawing ("Floor Plans standard" for plans, "RCP standard," for RCP Plans etc.")

[12] The parties correctly note that virtually no authority exists interpreting this provision.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 4/12/17